**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| THE STATE OF IOWA, in its sovereign capacity;<br><br>THE STATE OF MISSOURI, in its sovereign capacity;<br><br>THE AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE,<br><br>*Plaintiffs*,<br><br>v.<br><br>LETITIA JAMES, in her official capacity as the Attorney General of New York;<br><br>AMANDA LEFTON, in her official capacity as Commissioner of the New York State Department of Environmental Conservation,<br><br>*Defendants*. | Civil Case No.: 4:26-cv-00752-HEA |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

## INTRODUCTION

New York regulates conduct that has no constitutionally relevant connection to New York. Through its Mandatory Greenhouse Gas Reporting Program ("GHG Rule"), it imposes reporting requirements, compliance costs, and potential criminal and civil penalties on activity occurring outside of New York—including on Missouri's ethanol and biodiesel industry. Defendants readily foresaw this. During the regulatory process, commenters alerted New York that the GHG Rule would apply to facilities outside the State. But rather than disavow the rule's extraterritorial reach, New York asserted—flatly and without elaboration—that the rule was both constitutional and necessary to achieve New York's goal of reducing greenhouse gas emissions.

Defendants' motion to dismiss does not dispute that the GHG Rule's plain text projects New York's authority beyond its borders, including to conduct in Missouri (and Iowa). But Missouri (and Iowa) do not require greenhouse gas reporting. Their citizens, through their elected representatives, have exercised their State's equal sovereignty to make different policy choices. Plaintiffs brought this lawsuit to prevent New York from governing within Missouri's (and Iowa's) sovereign spheres and to protect their citizens, and biofuel producing members of the American Free Enterprise Chamber of Commerce, from New York's constitutional overreach.

Rather than dispute that the GHG Rule applies within Missouri, Defendants argue that Missouri must defend its sovereignty and its citizens' rights by bringing its claims in Defendants' home court, in New York. But the motion is based on the mistaken premise that Plaintiffs challenge the regulatory process. This case is not about conduct in New York—either the regulatory process or Defendants' constitutionally permissible exercise of authority within New York. Plaintiffs challenge Defendants' assertion of coercive authority *outside* of New York—over, in relevant part, Missouri persons, entities, records, property, and conduct. Indeed, if the GHG Rule did not impose legal obligations outside of New York, including in this district, Plaintiffs' claims would not exist.

The motion should be denied. Defendants were told during rulemaking that the GHG Rule targets conduct outside New York and declined to disclaim that reach. Their motion does not dispute that the Rule governs conduct in Missouri. Plaintiffs do not need to wait for Defendants to seek exorbitant fines from or a criminal conviction of a Missouri citizen before challenging the regulation in Missouri, where the regulation applies. By projecting New York's coercive authority into Missouri, Defendants purposefully availed themselves of the privilege of governing here—and committed a tortious act in the jurisdictional sense. Personal jurisdiction and venue follows: Missouri itself and three regulated biofuels plants are in this district.

**BACKGROUND**

In 2019, New York enacted the Climate Leadership and Community Protection Act, which establishes statewide greenhouse-gas-reduction targets and directs the New York State Department of Environmental Conservation ("DEC") to adopt implementing regulations. Compl. ¶¶ 43–48. On December 1, 2025, DEC finalized Part 253, the Mandatory Greenhouse Gas Reporting Program (the "GHG Rule"), to collect emissions information for use in developing future greenhouse-gas-reduction strategies. *Id.* ¶¶ 49–51. The GHG Rule became effective on January 1, 2026, and requires covered entities to submit their first annual reports by June 1, 2027, using emissions data from this year. *Id.* ¶¶ 52–53, 130. Defendant Amanda Lefton, as DEC Commissioner, and Defendant Letitia James, as New York Attorney General, are responsible for administering and enforcing the GHG Rule. *Id.* ¶¶ 20–21.

The GHG Rule establishes six reporting categories, including "Fuel Suppliers," which includes Missouri producers and distributors of ethanol and biodiesel. *Id.* ¶¶ 60–64. Fuel Suppliers must report when they own and distribute for sale *any* amount of "Affected Liquid Fuels." *Id.* ¶¶ 70–71. Reading the definition of "Affected Liquid Fuels" together with the Rule's definitions of "Supplier," "Final Sale," and related terms, the GHG Rule regulates upstream producers and

distributors outside New York, including Missouri biofuel producers, if their fuel is ultimately provided to an end user in New York. *Id.* ¶¶ 72–83, 87–90, 103. Biofuel producers and distributors cannot tell whether their product, sold into the stream of commerce and blended into gasoline or diesel fuel, ends up in New York. *Id.* ¶ 126.

New York presumes jurisdiction over all emission sources unless the owner demonstrates that the GHG Rule does not apply. Compl. ¶ 104. Regulated entities must submit annual emissions reports, comply with prescribed measurement and data-collection requirements, and retain supporting records for five years. Large emission sources, a category that includes nearly every biofuels plant in the country, must retain records for ten years and obtain third-party verification. *Id.* ¶¶ 65–68, 104–11, 127–28. New York estimates annual compliance costs of roughly $17,500 to more than $91,000 per facility. *Id.* ¶¶ 114–15. It asserts authority to seek severe civil and criminal penalties and injunctive relief, *id.* ¶¶ 116–29, and to have DEC personnel enter property, inspect facilities and records, and take measurements and samples, *id.* ¶¶ 130–33.

Missouri and Iowa have adopted materially different greenhouse-gas policies. Compl. ¶¶ 134–44. Relevant here, Missouri imposes no greenhouse-gas reporting requirements or limits. *Id.* ¶¶ 139–42. The GHG Rule displaces that policy choice by imposing New York's reporting regime, costs, and enforcement exposure on firms and conduct within Missouri, injuring its sovereign authority, economy, tax revenues, and employment. *Id.* ¶¶ 145–55. Indeed, Missouri has six ethanol plants that produced 338 million gallons in 2023 and five biodiesel plants that produced approximately 257 million gallons that year. *Id.* ¶¶ 161–69. Two of those ethanol plants and one biodiesel plant are in this district.[1]

---

[1] The Complaint cites data files issued by the U.S. Energy Information Administration, which compiles official energy statistics for the U.S. Government. Compl. ¶ 66 (https://bit.ly/4uHIfaw);

(*Footnote continued on following page*)

During the rulemaking process, public commenters expressed concern that the Rule "violates the Dormant Commerce Clause by attempting to regulate commercial interests outside of New York State borders," reaches out-of-state emissions, and "require[s] fuel production facilities and refiners out of state to provide additional data." Compl. ¶¶ 97, 99. DEC responded—not by denying that the rule, in fact, regulates extraterritorially—but by asserting that the GHG Rule is constitutional and "necessary for New York State to comply with the statutory directives of the Climate Act." *Id.* ¶¶ 98, 100.

Plaintiffs challenge the GHG Rule on four grounds: extraterritorial regulation in violation of Missouri's sovereignty, Compl. ¶¶ 181–216; Clean Air Act preemption, *id.* ¶¶ 217–25; denial of due process to out-of-state entities lacking sufficient contacts with New York, *id.* ¶¶ 226–29; and warrantless inspection in violation of the Fourth Amendment, *id.* ¶¶ 230–44. Plaintiffs seek a declaration and an injunction barring any enforcement as to conduct occurring outside New York or, alternatively, barring enforcement within Missouri and Iowa, against entities incorporated in those States, and against AmFree's members. *Id.* ¶ 6, Prayer for Relief ¶¶ A–E.

## ARGUMENT

### I. This Court Has Personal Jurisdiction Because New York Has Projected Its Coercive Authority into Missouri.

The Court has personal jurisdiction over Defendants, who assert the authority to regulate Missouri residents for conduct in Missouri—a violation of Missouri's sovereignty. Plaintiffs need only "make a *prima facie* showing that personal jurisdiction exists, which is accomplished by

*id.* ¶ 67 (https://bit.ly/4d38Hp4). Those data files list U.S. ethanol and biodiesel plants, including Mid-America Biofuels in Mexico, Missouri (Audrain County), POET Biorefining-Laddonia LLC in Laddonia, Missouri (Audrain County), and POET Biorefining-Macon LLC in Macon, Missouri (Macon County), all of which are in this district. The Court may take judicial notice of these official government statistics. *Est. of Snyder v. Julian,* 2013 WL 4042195, at *13 (E.D. Mo. Aug. 8, 2013), *aff'd*, 789 F.3d 883 (8th Cir. 2015).

pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (cleaned up). The Complaint makes this *prima facie* showing.[2]

### A. By Regulating Conduct Within Missouri, Violating Missouri's Sovereignty, New York Purposefully Availed Itself of Missouri.

Due process requires that the defendant purposefully establish "minimum contacts" in the forum state, including by "engag[ing] in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State . . . .'" *Id.* at 592 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "To assess whether a defendant has purposefully availed itself of the forum and established minimum contacts, we examine the nature, quality, and quantity of the defendant's contacts with the forum State and the connection between the cause of action and those contacts." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015). To assess the reasonableness of exercising jurisdiction, the Court considers "the interests of the forum State, the burden on the defendant, and the plaintiff's interest in obtaining relief." *Id.* at 982. Defendants cite these factors but do not address them.

Each of the *Creative Calling* factors—nature, quality, quantity, and connection—favors jurisdiction, as do the reasonableness considerations. Defendants are violating Missouri's sovereignty by asserting coercive authority over Missouri persons, records, property, and conduct. When a defendant directs actions at the forum State, "[j]urisdiction . . . may not be avoided merely

[2] Defendants twice assert that the Complaint does not specifically allege personal jurisdiction in its jurisdictional statement. Mem. 4, 7. Nothing requires Plaintiffs to do so. Rule 8(a)(1) requires only "a short and plain statement of the grounds for the court's jurisdiction" over the "claim for relief"—not the court's jurisdiction over a party. Fed. R. Civ. P. 8(a) (emphasis added). Rule 8(a) is about subject matter, not personal, jurisdiction, and therefore, nothing requires personal jurisdiction to be specifically pleaded. *See* 5 Fed. Prac. & Proc. Civ. § 1206 (4th ed.) (Pleading Jurisdiction—In General); *see also Hypefortype Ltd. v. Universal Music Grp., Inc.*, 2017 WL 11537717, at *1 (E.D.N.Y. Sept. 17, 2017) (explaining and citing cases).

because the defendant did not physically enter the forum State." *Burger King*, 471 U.S. at 476. And New York's "voluntarily assumed" regulatory authority almost guarantees imminent entry into Missouri. *See id.* at 474.

Here, Defendants have purposefully directed their ongoing regulatory authority into Missouri. DEC was told during rulemaking that the GHG Rule reaches commercial interests, emissions, fuel-production facilities, and refiners outside New York, yet New York persisted. Compl. ¶¶ 97–100. Defendants do not dispute that the GHG Rule sweeps in upstream biofuel producers and distributors, including those in Missouri, and outside New York. *Id.* ¶¶ 60–90, 103.

The GHG Rule creates repeated contacts by imposing recurring obligations. The first reports are due June 1, 2027, regarding 2026 data, requiring covered entities to collect and maintain information right now. Compl. ¶¶ 52–53, 106–11. Defendants voluntarily created a continuously operative regulatory relationship in Missouri and expect ongoing compliance activity, in Missouri, as entities collect data, retain records, procure verification, and prepare reports to DEC.

The quantity inquiry therefore cannot be reduced to whether Defendants have yet sent an enforcement notice into Missouri. Mem. 8. Those "contemplated future consequences," *Burger King*, 471 U.S. at 479, in Missouri, aimed at Missouri firms, subjecting them to New York's jurisdiction, underscore that Defendants have purposefully availed themselves of Missouri and "should reasonably anticipate being haled into court here," *id.* at 474.

Defendants' contacts are with Missouri itself, not merely with persons who reside here. *Cf. Walden v. Fiore*, 571 U.S. 277, 285 (2014). The GHG Rule does not incidentally burden firms that happen to be in Missouri. Authority over conduct on Missouri soil, records maintained in Missouri, and Missouri property subject to inspection. New York has thus "formed a contact with the forum State" in that it has purported to govern there. *Id.* at 290. And because Missouri's sovereign interest

in exclusive regulatory authority over its own territory is itself the injury, the "relationship among the defendant, the forum, and the litigation" is established. *Id.* at 291.

Defendants' asserted authority to seek civil and criminal penalties and injunctive relief against Missouri entities for Missouri conduct is both what makes them proper *Ex parte Young* defendants, 209 U.S. 123, 155–57 (1908), and what constitutes their purposeful contact with Missouri. Defendants cannot claim the enforcement authority and disclaim the jurisdictional consequence of asserting it here. Because Defendants already assert that authority here, Plaintiffs do not need to wait for Defendants to sue a Missouri producer before this Court has jurisdiction.

The additional reasonableness factors also weigh in Plaintiffs' favor. Defendants are displacing Missouri's sovereign policy choices not to impose greenhouse-gas reporting requirements. Compl. ¶¶ 134–44. Missouri's in-state ethanol and biodiesel industry will bear the initial costs of the GHG Rule, and those additional costs will likely harm Missouri's economy more broadly through reduced economic activity, lost tax receipts, and negative employment effects. *Id.* ¶¶ 145–55, 161–69. And Defendants' burden to litigate in Missouri is not significant. Surely it is no more significant than the current regulatory burden on and intended enforcement actions against Missouri companies. This case about the lawfulness of Defendants' regulatory authority is not discovery-heavy. New York is litigating cases across the country,[3] and Defendants identify no burden that makes defending the case in Missouri constitutionally unreasonable.

Neither of Defendants' principal authorities compels a different result.[4] In *Iowa Pork*

[3] *E.g.*, *New York v. Vought*, No. 6:25-cv-02384 (D. Or.); *California v. U.S. Dep't of Transp.*, No. 2:25-cv-02574 (W.D. Wash.); *California v. Kennedy*, No. 4:26-cv-07991 (N.D. Cal.).

[4] Defendants also cite *West Virginia v. James*, No. 25-cv-168 (N.D.N.Y.). Mem. 3 n.1. The choice of venue there is permissive, not exclusive. Also, the challenged law there is different. That case challenges New York's Climate Superfund Act, which imposes $75 billion in fines on energy producers for their past contributions to greenhouse gas emissions from 2000 to 2024. N.Y. Env't

(*Footnote continued on following page*)

*Producers*, the court characterized the challenged regulation (perhaps incorrectly) as merely regulating the sale of pork in California, not its production in Iowa. *Iowa Pork Producers Ass'n v. Bonta*, 2021 WL 4465968, at *6–*7 (N.D. Iowa Aug. 23, 2021). Nor does *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), bear on this motion. *Ross* addressed the merits of a dormant Commerce Clause challenge to that law, 598 U.S. at 369–71. It says nothing about personal jurisdiction, and it did not license a State to impose affirmative duties on out-of-state production. Here, by contrast, Plaintiffs challenge Defendants' regulation of production and distribution in Missouri, well upstream from any sales in New York. Also, the plaintiffs in *Iowa Pork Producers* unsuccessfully relied on the "effects test." 2021 WL 4465968, at *7–*8 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). But here, Plaintiffs do not rely on downstream economic effects; instead, Defendants purposefully availed themselves of Missouri's jurisdiction by projecting New York's authority into the State and onto Missouri-based conduct.

*Morningside Church* is also inapposite. There, the plaintiffs sued out-of-state officials in Missouri over investigations of conduct in Arkansas and California. *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 620–21 (8th Cir. 2021) (citing *Walden v. Fiore*, 571 U.S. 277 (2014)). The court found no personal jurisdiction because the letters and demands reached Missouri only because the regulated parties happened to reside there. *Id.* Here, Defendants intentionally project New York's authority into Missouri, purposeful contacts that are not merely fortuitous.

### B. Missouri's Long-Arm Statute Reaches New York's Projection of Its Coercive Authority into Missouri.

Defendants include a cursory argument that the Complaint fails to allege sufficient facts to

---

Consev. Law § 76-0101(6), (9). That law also violates Missouri's, Iowa's, and other States' equal sovereignty under the Constitution, but it is a one-time imposition of a retroactive fine. This case challenges New York's ongoing imposition of coercive regulatory authority within Missouri's (and Iowa's) borders, providing this Court with personal jurisdiction over Defendants.

satisfy Missouri's long-arm statute, Mo. Rev. Stat. § 506.500.1. Mem. 8–9. This argument is mistaken. Plaintiffs' claims arise from Defendants' ongoing assertion of authority over Missouri citizens for conduct occurring in Missouri, in violation of Missouri's sovereignty, which constitutes a cause of action arising from tortious acts committed within the state.

Missouri's long-arm statute authorizes personal jurisdiction "as to any cause of action arising from the doing of any of such acts" to include for example "[t]he commission of a tortious act within this state." Mo. Rev. Stat. § 506.500.1. "In adopting the long-arm statute, the Missouri legislature 'intended to provide for jurisdiction, within the specific categories enumerated in the statutes [e.g., transacting business or making a contract within the state,] to the full extent permitted by the due process clause.'" *K-V Pharm. Co.*, 648 F.3d at 592 (quoting *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo.1984) (en banc)).

Contrary to Defendants' argument, the long-arm statute is not cabined to "the commission of a tort." Mem. 8. By its plain text, it extends to "any cause of action arising from . . . tortious act[s]," Mo. Rev. Stat. § 506.500.1(3), "and the Missouri courts have construed that phrase literally," *Fulton v. Chi., Rock Island & P. R.R. Co.*, 481 F.2d 326, 332 (8th Cir. 1973).[5] The Supreme Court has explained that "there can be no doubt that claims brought pursuant to [42 U.S.C.] § 1983 sound in tort." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999). And in *Morningside Church*, the Eighth Circuit assumed that 42 U.S.C. § 1983 claims satisfy the long-arm statute, characterizing them as a "constitutional deprivation" that "sound[s] in intentional tort." 9 F.4th at 617, 619–621.

The Complaint makes the required *prima facie* showing under Mo. Rev. Stat.

---

[5] Thus the statute reaches a suit for indemnity arising from a tort, even though an indemnity claim is not itself a tort claim. *Fulton*, 481 F.2d at 332 (citing *State ex rel. Apco Oil Corp. v. Turpin*, 490 S.W.2d 400, 405, 407 (Mo. App. 1973)).

§ 506.500.1(3). It expressly invokes 42 U.S.C. § 1983 and seeks injunctive relief under *Ex parte Young*, alleging that Defendants, acting under color of New York law, are administering and enforcing a regulatory regime that subjects Missouri suppliers to New York's jurisdiction for conduct occurring within Missouri. Compl. ¶¶ 20–25, 55–59, 60–90. The GHG Rule requires regulated entities in Missouri to collect and calculate data, preserve records, obtain third-party verification, submit annual reports, respond to demands to establish nonapplicability, and potentially permit access to their property and records. *Id.* ¶¶ 104–33, 171–72. And Defendants threaten Missouri entities with civil or criminal penalties and injunctive enforcement for noncompliance. *Id.* ¶¶ 116–27. Moreover, Counts III and IV allege that this assertion of authority deprives regulated entities of due process and subjects their property to unconstitutional searches. *Id.* ¶¶ 226–44. Those constitutional deprivations in Missouri are "tortious acts" in the jurisdictional sense, and the claims arise from that conduct.

Defendants do not dispute that the GHG Rule reaches into Missouri to regulate Missouri-based conduct, and they do not disclaim their asserted authority to enforce the rule against Missouri entities for that conduct. That is enough for personal jurisdiction in Missouri. But if the Court finds additional facts are necessary, the Court should permit jurisdictional discovery. *See Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003). Discovery could determine whether Defendants identify out-of-state biofuels suppliers as reporting entities, expect them to report, or have developed specific plans to enforce the rule outside of New York, including in Missouri.

## II. Venue Is Proper in the Eastern District of Missouri, Where New York Projects Its Coercive Regulatory Authority.

Defendants' venue argument rests on the mistaken premise that the only relevant events are the promulgation and administration of the GHG Rule in New York. Mem. 10–11. But Plaintiffs do not challenge the regulatory process or the rule's enforcement in New York. They

challenge Defendants' application of New York law to persons, property, records, and conduct in Missouri, violating Missouri's exclusive sovereignty to regulate those activities.[6] In fact, if the GHG Rule did not impose legal obligations on activities and facilities *outside* of New York, and in this district, Plaintiffs' claims would not exist. Because three Missouri biofuel facilities governed by the GHG Rule are in this district, venue is proper under 28 U.S.C. § 1391(b)(2).

Section 1391(b)(2) permits an action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The question is "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Setco Enters. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994); *see also Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) (holding venue was proper even though another district had a stronger connection to the defendants).

Courts routinely hold that venue is proper for challenges to regulations in the district where the regulated activity occurs. In *Mo. Ins. Coal. v. Huff*, 2013 WL 363406, at *2 (E.D. Mo. Jan. 30, 2013), this Court held that venue lay here, not exclusively in the Western District, because the regulation was effective against the plaintiff and its members in this district. So too in *American Free Enterprise Chamber of Commerce v. Engine Manufacturers Association*, where venue lay in Illinois over a California official because "California contemplated a course of performance that would occur in Illinois." 2025 WL 3124154, at *3-5 (N.D. Ill. Nov. 7, 2025) (transferring on

[6] *See Bonaparte v. Tax Ct.*, 104 U.S. 592, 594 (1881) ("No State can legislate except with reference to its own jurisdiction."); *N.Y. Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914) (A State's law cannot "operate beyond the jurisdiction of that State . . . without throwing down the constitutional barriers by which all the States are restricted within the orbits of their lawful authority."); *Bigelow v. Virginia*, 421 U.S. 809, 824 (1975) ("A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected."); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571–72 (1996); *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989).

separate section 1404(a) grounds not asserted here); *see also Farmland Dairies v. McGuire*, 771 F. Supp. 80, 82 & n.3 (S.D.N.Y. 1991).

Defendants do not dispute the GHG Rule's scope. That establishes a substantial part of the challenged regulatory activity occurs in this district. As discussed above, the GHG Rule imposes regulatory duties on out-of-state "Fuel Suppliers," including Missouri's biofuel producers and distributors, that may not sell directly into New York nor control their product's downstream destination. Compl. ¶¶ 60–90. Three such suppliers are in this district. *See supra* note 1. Per the GHG Rule, those entities must currently collect and calculate emissions information, maintain supporting records, and prepare to submit annual reports, *id.* ¶¶ 104–13, subject to potentially ruinous civil and criminal penalties, injunctive enforcement, and even site inspections, *id.* ¶¶ 116–33. This district is therefore not merely one place where the harm is felt; it is a district where the challenged regulatory overreach occurs.

None of Defendants' cases support a different result. Indeed, the two Eighth Circuit cases show why venue is proper. *Woodke* found venue improper because the advertisement at issue in that Lanham Act case was not in Iowa—where the product advertised was lawfully made and the suit was brought. *Woodke v. Dahm*, 70 F.3d 983, 985–86 (8th Cir. 1995). Similarly, *Steen* found that Iowa was an improper venue because the negligent conduct at issue occurred in Nebraska, even if effects were felt in Iowa. *Steen v. Murray*, 770 F.3d 698, 702–04 (8th Cir. 2014). Unlike *Woodke* and *Steen*, Plaintiffs do not challenge tortious conduct occurring elsewhere that causes harm in this district. Plaintiffs challenge Defendants' application of the rule in this district.

Nor does out-of-circuit *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173 (D.D.C. 2009), help New York. That court applied a different venue statute, 28 U.S.C. § 1391(e), applicable only to federal government defendants. The case addressed the government's motion to

transfer the case to where the regulated rivers at issue were located, not a Rule 12(b)(3) motion.

Indeed, the plaintiff there "concede[d] that venue would have been appropriate in the District of Arizona," *NAHB*, 675 F. Supp. 2d at 176. The court denied the transfer motion, in part because one claim asserted that the federal government "violated the APA's procedural requirements in making this determination." *Id.* at 175. Plaintiffs, by contrast, do not challenge the process by which New York issued the GHG Rule. The venue for process-based regulatory challenges therefore might be proper, as Defendants contend, "in the state where the decision-making process occurred." Mem. 11. But the plaintiffs in *NAHB* acknowledged that venue might also be proper where the regulatory burden is felt, which, here, includes this district.

*Iowa Pork Producers* is inapposite too. Its venue holding rested on the same "brunt of the harm" framing as its jurisdictional holding, 2021 WL 4465968, at *12, and Plaintiffs do not rely on downstream effects. They challenge regulatory commands imposed on conduct in this district.

*Missouri v. Biden* supports Plaintiffs. Mem. 12. It held venue proper in this district because Missouri "resides throughout its sovereign territory." 738 F. Supp. 3d 1113, 1144 (E.D. Mo. 2024), *aff'd and remanded sub nom. Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025). That means the sovereign injury New York inflicts is suffered in this district no less than in any other. *Missouri* does not create an exclusive state-capital venue rule, and the language Defendants quote is dictum about where venue "generally" lies. *Id.*; *see Pecoraro*, 340 F.3d at 563. This district has a substantial connection to Plaintiffs' claims.

**CONCLUSION**

Plaintiffs respectfully request that the Court deny the motion to dismiss.

DATED: August 14, 2026

Respectfully Submitted,

*/s/ Michael A. Petrino*

Michael A. Petrino (E.D. Mo. #994060DC)
Caleb Kruckenberg (E.D. Mo. # 1617890DC)
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave, NW
Suite 625
Washington, DC 20036
(202) 833-8400
petrino@cir-usa.org
kruckenberg@cir-usa.org

*Counsel for Plaintiffs*

CATHERINE L. HANAWAY
Attorney General of Missouri

Louis J. Capozzi III, #77756(MO)
*Solicitor General*
William James Seidleck, #77794(MO)
*Principal Deputy Solicitor General*
Graham Miller, #77656(MO)
*Deputy Solicitor General*
Office of the Attorney General
Old Post Office Building
815 Olive Street, Suite 200
St. Louis, MO 63101
Phone: (573) 645-9662
William.Seidleck@ago.mo.gov
Graham.Miller@ago.mo.gov

*Counsel for State of Missouri*

BRENNA BIRD
Attorney General of Iowa

Eric H. Wessan
*Solicitor General*
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for State of Iowa*